JUDGE SWAIN

ROBERT WISNIEWSKI (RW-5308)
ROBERT WISNIEWSKI P.C.
Attorneys for Plaintiff
225 Broadway, Suite 1020
New York, NY 10007
(212) 267-2101

14 CV 241



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
GERMAN CESPEDES, DEYNIS R. PEREZ, FRANCISCO J.
PEREZ and HIPOLITO DURAN,

                                  Plaintiffs,             Docket No.:

                  -against-

                                            **COMPLAINT**

DERMOT REALTY MANAGEMENT CO., INC.,
DERMOT REALTY, LTD, WILLIAM P. DICKEY,        **JURY TRIAL**
STEPHEN N. BENJAMIN, MICHAEL DiGIACOMO    **DEMANDED**
and DREW SPITLER,

                               Defendants,
------------------------------------------------------------------------X

## COMPLAINT

1.       Plaintiffs German Cespedes ("Cespedes"), Deynis R. Perez ("D. Perez"),

Francisco J. Perez ("F. Perez") and Hipolito Duran ("Duran") (collectively

"Plaintiffs") by their attorneys, Robert Wisniewski P.C., as and for their

Complaint against the Dermot Realty Management Co., Inc. ("DRM"), Dermot

Realty, LTD ("DR") (collectively "Corporate Defendants"), William P. Dickey

("Dickey"), Stephen N. Benjamin, ("Benjamin"), Michael DiGiacomo

("DiGiacomo") and Drew Spitler ("Spitler") (collectively "Individual

Defendants") state as follows:

## NATURE OF THE ACTION

2.　　　　Plaintiffs bring this action to recover unpaid wages, unpaid overtime wages, liquidated damages and reasonable attorneys' fees under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.) ("FLSA"), and the various regulations and policy statements promulgated by the U.S. Department of Labor and codified in Title 29 of the Code of Federal Regulations, 29 C.F.R. 500 et seq.; the New York Labor Law, including, but not limited to, Articles 6 and 19 ("New York Labor Law" or "NYLL"), and the various wage orders promulgated by the New York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 135-146; and the common law of the State of New York.

3.　　　　The Individual Defendants are officers, shareholders, managers and/or majority owners of the Corporate Defendants.

4.　　　　The Corporate Defendants are in the business of residential building management and leasing in New York City.

5.　　　　Plaintiffs were employed by Corporate Defendants as handymen at various buildings that the Corporate Defendants managed.

6.　　　　Plaintiffs were employees of the Corporate Defendants during the six years immediately preceding the initiation of this action and have performed labor and services as employee as defined by the FLSA, New York Labor Law, and the various regulations, policy statements, and wage orders promulgated thereunder, but Plaintiffs have not received the compensation required by the FLSA, New

York Labor Law, the various regulations, policy statements, and wage orders promulgated thereunder, and the common law of the State of New York.

7.    As such, Plaintiffs were persons covered by, and/or intended to benefit from, the provisions of the FLSA and New York Labor Law, the various regulations and wage orders promulgated thereunder, and/or the common law of the State of New York in respect to his work for Defendants.

8.    Plaintiffs regularly worked over 40 hours per week, but were not properly compensated for an hours they worked over 40 in a given workweek.

## PARTIES, JURISDICTION AND VENUE

9.    Plaintiff German Cespedes, at all relevant times herein, was and still is a resident of the State of New York, New York County.

10.   Plaintiff Deynis R. Perez, at all relevant times herein, was and still is a resident of the State of New York, New York County.

11.   Plaintiff Francisco J. Perez, at all relevant times herein, was and still is a resident of the State of New York, New York County.

12.   Plaintiff Hipolito Duran, at all relevant times herein, was and still is a resident of the State of New York, New York County.

13.   At all relevant times herein, Defendant Dermot Realty Management Co., Inc. was and still is a domestic business corporation duly organized under, and existing by virtue of, the laws of the State of New York, and presently having its principal place of business at 729 Seventh Avenue, 15th Floor, New York, New York 10019.

14.     At all relevant times herein, Defendant Dermot Realty, LTD. was and still is a
        domestic business corporation duly organized under, and existing by virtue of, the
        laws of the State of New York, and presently having its principal place of business
        at 729 Seventh Avenue, 15th Floor, New York, New York 10019.

15.     At all relevant times herein, the Corporate Defendants transacted and still transact
        substantial business and derived and still derive substantial revenue from services
        rendered in the State of New York.

16.     At all relevant times herein, upon information and belief, Defendant Dickey was
        and is a resident of the State of New York, New York County.

17.     At all relevant times herein, upon information and belief, Defendant Benjamin
        was and is a resident of the State of New York, New York County.

18.     At all relevant times herein, upon information and belief, Defendant DiGiacomo,
        was and is a resident of the State of New York, New York County.

19.     At all relevant times herein, upon information and belief, Defendant Spitler, was
        and is a resident of the State of New York, New York County.

20.     Defendant Dickey holds himself out as the Founder, President and CEO of DRM
        and/or DR (See Dermot Website http://dermotcompany.com/key_executives.cfm
        accessed on July 17, 2013) and was and is an officer, director, employee, agent,
        manager and/or majority shareholder or owner of the Corporate Defendants DRM
        and/or DR and, as one of the ten largest shareholders, is individually responsible
        for unpaid wages under the New York Business Corporation Law (**Exhibit 1**).

21.     Defendant Benjamin holds himself out as a Principal, Chief Operating Officer of

DRM and/or DR (See **Exhibit 1** ) and, upon information and belief, was and is an officer, director, employee, agent, manager and/or majority shareholder or owner of the Corporate Defendants DRM and/or DR and, as one of the ten largest shareholders, is individually responsible for unpaid wages under the New York Business Corporation Law.

22.     Defendant DiGiacomo holds himself out as the Director of Construction of DRM and/or DR (See **Exhibit 1**) and was and is an officer, director, employee, agent, manager and/or majority shareholder or owner of the Corporate Defendants DRM and/or DR and, as one of the ten largest shareholders, is individually responsible for unpaid wages under the New York Business Corporation Law.

23.     Defendant Spitler holds himself out as the Director of Development of DRM and/or DR (See **Exhibit 1**) and, upon information and belief, was and is an officer, director, employee, agent, manager and/or majority shareholder or owner of the Corporate Defendants DRM and/or DR and, as one of the ten largest shareholders, is individually responsible for unpaid wages under the New York Business Corporation Law.

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this action arises under 29 U.S.C. § 201 et seq. (FLSA); and 28 U.S.C. §1337 (Regulation of Commerce). This Court has jurisdiction over the Plaintiffs state law claims pursuant to 28 U.S.C. § 1367.

25.     The Defendants engage in an enterprise whose annual volume of sales made or business done is not less than $500,000.00, the activities of which affect interstate

commerce in that the employees of said Defendants produce, sell, handle or otherwise work on goods that have been moved in or produced for interstate commerce, and Defendants are thus employers subject to the jurisdiction of the FLSA.

26.     This Court has personal jurisdiction over the Individual Defendants in that they are citizens and residents of the State of New York, New York County.

27.     This Court is a proper venue for this action, pursuant to, among other grounds, 28 U.S.C. § 1391(b).

## JURY DEMAND

28.     Plaintiffs demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

*Facts Relating to Plaintiff Cespedes' Employment*

29.     Corporate Defendants are engaged in the business of residential building management and leasing in New York City.

30.     At all relevant times, DRM and/or DR owned and/or managed the building located at 370 Fort Washington, New York, New York 10033.

31.     On or about May 5, 2011, Cespedes entered into an oral contract with DRM and/or DR whereby Cespedes would serve as the handyman at the building located at  370 Fort Washington, New York, New York 10033, and work for J.W. Realty in exchange for a specific weekly wage of $544 and a basement apartment. The oral agreement with Corporate Defendants dictated that Cespedes' regular work hours would be from 9:00 a.m. to 5:00 p.m., Monday through Friday, and

that he could take an hour lunch break.  Pursuant to his oral contract, Cespedes was to receive Saturdays, Sundays and holidays off.

32.    His employment ended in or about December 2012.

33.    At all relevant times herein, Cespedes worked from approximately 7:00 a.m. to 7:00 p.m., Monday through Friday, and typically for 4 hours per day on Saturdays and Sundays despite Defendants' oral agreement with him that he would work 40 hours a week.

34.    In addition, a majority of the time Cespedes would not be able to take his lunch break because he was too busy with all of the duties of his position.

35.    Instead, Cespedes worked an average of 68 hours per week and was on-call seven days per week.

36.    On almost a weekly basis, Cespedes made complaints to his supervisors Jay Osbone, Juan Rivera and Dominic "last name unknown" (hereinafter "l/n/u/") about his pay.  Specifically, Cespedes would complain that he was not receiving an adequate amount of pay for all of the hours and work that he did in a given workweek.  The supervisors told Cespedes that they would look into it and correct the problem, but they never did.

37.    At all relevant times herein, Cespedes provided building maintenance services, performing the work of a handyman in a 75-unit building managed by DRM and/or DR, including, but were not limited to, mopping all hallways and floors on a regular basis removing all debris and garbage on a daily basis; cleaning and clearing the entire lobby and elevators on a daily basis; plastering and painting

interior walls.

38.     Cespedes' duties for DRM and/or DR also included, but were not limited to, removing damaged walls and ceilings in apartments and installing new sheetrock; removing and installing apartment fixtures.

39.     Defendants paid Cespedes $544 per week no matter how many hours he worked.

40.     Despite being a non-exempt employee performing non-exempt duties, throughout his employment Cespedes was not compensated for any hours worked over 40 in a given workweek, either at the regular rate or at the premium overtime rate.

*Facts Relating to Plaintiff D. Perez's Employment*

41.     At all relevant times, DRM and/or DR managed the building located at 615 West 173rd Street, New York, New York 10032.

42.     In or about September 2007, D. Perez entered into an oral contract with DRM and/or DR whereby D. Perez would serve as the handyman at the building located at 615 West 173rd Street, New York, New York 10032, and work for DRM/DR in exchange for a specific weekly net wage of $372.00 and a basement apartment. The oral agreement with Corporate Defendants dictated that D. Perez's regular work hours would be from 9:00 a.m. to 5:00 p.m., Monday through Friday, and include a one hour lunch break. Pursuant to his oral contract, D. Perez was to receive Saturdays, Sundays and holidays off.

43.     His employment ended in or about December 2012.

44.     At all relevant times herein, D. Perez worked from approximately 9:00 a.m. to 9:00 p.m. seven days per week. Despite having an agreement with Defendants

that he would have an hour for lunch, D. Perez was never able to take his break due to the amount of work he was required to do.  D. Perez worked an average of 84 hours per week.

45.      In addition, D. Perez was never compensated for his first week of employment.

46.      At least once a month, D. Perez made complaints to his supervisors Jay Osbone, Juan Rivera and Dominic l/n/u about his pay.  Specifically, D. Perez would complain that he was not receiving an adequate amount of pay for all of the hours and work that he did in a given workweek.  The supervisors told D. Perez that they would look into it and correct the problem, but they never did.

47.      At all relevant times herein, D. Perez provided building maintenance services, performing the work of a handyman in a 60-unit building managed by DRM and/or DR, including, but were not limited to, mopping all hallways and floors on a regular basis removing all debris and garbage on a daily basis; cleaning and clearing the entire lobby and elevators on a daily basis; plastering and painting interior walls.

48.      D. Perez's duties for DRM and/or DR also included, but were not limited to, removing damaged walls and ceilings in apartments and installing new sheetrock; removing and installing apartment fixtures.

49.      Defendants paid D. Perez $372 per week no matter how many hours he worked.

50.      Despite being a non-exempt employee performing non-exempt duties, throughout his employment D. Perez was not compensated for any hours he worked over 40 in a given workweek, nor was he compensated at the premium overtime rate.

*Facts Relating to Plaintiff F. Perez's Employment*

51.      At all relevant times, DRM and/or DR managed the building located at 95 Thayer Street, New York, New York 10040.

52.      In or about March 7 2007, F. Perez entered into an oral contract with DRM and/or DR whereby R. Perez would serve as the handyman at the building located at 95 Thayer Street, New York, New York 10040, and work for DRM/DR in exchange for a specific weekly net wage of $320.00 and a basement apartment.  The oral agreement also dictated that F. Perez's would work regular hours Monday through Friday, and that he would be able to take a half-hour lunch break. Pursuant to his oral contract, F. Perez was to receive Saturdays, Sundays and holidays off.

53.      His employment ended on or about December 15, 2012.

54.      At all relevant times herein, F. Perez worked from approximately 5:30 a.m. to 10:00 p.m. seven days per week.  F. Perez worked an average of 115.5 hours per week.

55.      In  addition, a majority of the time F. Perez would not be able to take his lunch break because he was too busy with all of the duties of his position.

56.      Almost every week, F. Perez made complaints to his supervisors Jay Osbone, Juan Rivera and Dominic l/n/u about his pay.  Specifically, F. Perez would complain that he was not receiving an adequate amount of pay for all of the hours and work that he did in a given workweek.  The supervisors told F. Perez that they would look into it and correct the problem, but they never did.

57.      At all relevant times herein, F. Perez provided building maintenance services,

performing the work of a handyman in a 60-unit building managed by DRM and/or DR, including, but were not limited to, mopping all hallways and floors on a regular basis removing all debris and garbage on a daily basis; cleaning and clearing the entire lobby and elevators on a daily basis; plastering and painting interior walls.

58.     F. Perez's duties for DRM and/or DR also included, but were not limited to, removing damaged walls and ceilings in apartments and installing new sheetrock; removing and installing apartment fixtures.

59.     Defendants paid F. Perez $310 per week no matter how many hours he worked.

60.     Despite being a non-exempt employee performing non-exempt duties, throughout his employment F. Perez was not compensated for any hours he worked over 40 in a given workweek, nor was he compensated at the premium overtime rate.

*Facts Relating to Plaintiff Duran's Employment*

61.     At all relevant times, DRM and/or DR managed the building located at 4848 Broadway, New York, New York 10034.

62.     In or about March 2007, Duran entered into an oral contract with DRM and/or DR whereby Duran would serve as the handyman at the building located at 4848 Broadway, New York, New York 10034, and work for DRM/DR in exchange for a specific hour wage of $7.79 and a basement apartment. The oral agreement with Corporate Defendants dictated that Duran's regular work hours would be from 8:00 a.m. to 5:00 p.m., Monday through Friday, and was not told that the was allowed to have a lunch break.  Pursuant to his oral contract, J. Perez was to

-11-

receive Saturdays, Sundays and holidays off.

63.       His employment ended in or about November 2012.

64.       At all relevant times herein, Duran worked from approximately five days a week from 8:00 a.m. to 5:00 p.m. and two days a week from 6:30 a.m. to 6:00 p.m., depending on the amount of work, seven days per week. Duran worked an average of 68 hours per week.

65.       In addition, because of the oral agreement and the amount of work Duran was required to perform, Duran never took a lunch break.

66.       At least two to three times a week, Duran made complaints to his supervisors Juan Vasquez, Jay Osbone, Juan Rivera and Dominic l/n/u about his pay. Specifically, Duran would complain that he was not receiving an adequate amount of pay for all of the hours and work that he did in a given workweek. The supervisors told Duran that they would look into it and correct the problem, but they never did.

67.       At all relevant times herein, Duran provided building maintenance services, performing the work of a handyman in a 36-unit building managed by DRM and/or DR, including, but were not limited to, mopping all hallways and floors on a regular basis removing all debris and garbage on a daily basis; cleaning and clearing the entire lobby and elevators on a daily basis; plastering and painting interior walls.

68.       Duran's duties for DRM and/or DR also included, but were not limited to, removing damaged walls and ceilings in apartments and installing new sheetrock; removing and installing apartment fixtures.

69.     Despite being a non-exempt employee performing non-exempt duties, throughout his employment Duran was paid at his regular rate for all hours he worked, even those hours in which Duran worked more than 40 hours in a given workweek.

70.     Defendants failed to pay Duran premium overtime compensation for all hours worked over 40 in a given workweek.

*Corporate Defendants and Individual Defendants are Joint Employers*

71.     The Individual Defendants had control over the conditions of Individual Plaintiffs' employment, their work schedule, the rates and methods of payment of their wages and the maintenance of their employment records.

72.     At all relevant times herein, upon information and belief, the Individual Defendants were and still are owners, directors, officers, managers, employees and/or agents of the Corporate Defendants.

73.     At all times relevant herein, the Individual Defendants have directly managed, handled, or been responsible for, the payroll and/or payroll calculations and/or signing or issuing checks to the Plaintiffs and by virtue of their positions with the Corporate Defendants have been responsible for the proper management and handling of the payroll and payroll calculations for the Corporate Defendants.

74.     At all relevant times, the Individual Defendants had operational control of the Individual Plaintiffs' employment by virtue of their financial control over the Corporate Defendants and therefore the Individual Plaintiffs' wages, and because they hired and fired managerial employees who supervised the Individual Plaintiffs' employment.

-13-

75.     Plaintiffs understood that the Individual Defendants were the parties that their direct supervisors reported to and therefore were the "decision makers" with respect to the Corporate Defendant.

76.     The Individual Defendants worked in at least four buildings owned and/or managed by Individual Defendants.

77.     The Corporate Defendants and Individual Defendants share common ownership, operate out of the same location, share a common website and exchange employees. Particularly, Corporate Defendants and the Individual Defendants share a common principal office address: 729 Seventh Avenue, 15th Floor, New York, New York 10019.

78.     At all times herein, the Individual Defendants have conducted business as the Corporate Defendants.

79.     At all times relevant herein, the Individual Defendants have acted for and on behalf of the Corporate Defendants, with the power and authority vested in them as officers, agents and employees of the Corporate Defendants, and have acted in the course and scope of their duties and functions as agents, employees and officers of the Corporate Defendants.

80.     At all relevant times, the Individual Defendants had operational control over the Corporate Defendants.

81.     Upon information and belief, the Individual Defendants have willfully and intentionally acted to violate the laws, rules, regulations, statutes and wage orders alleged herein, and by doing so and by virtue of their positions as controlling

-14-

owners, shareholders, directors, officers and/or managers of the Corporate

Defendants, have assumed personal liability for the claims of the Plaintiffs herein.

82.     As a matter of economic reality, all Defendants are joint employers of Plaintiff

and, as a result, all Defendants, individually and collectively, and jointly and

severally, are liable for all claims made herein.

***The Corporate Defendants are the Alter Egos of the Individual Defendants and of Each Other***

83.     Upon information and belief, the Corporate Defendants are controlled by the

Individual Defendants, and upon information and belief, each provide mutually

supportive services to the substantial advantage of the other such that each entity

is operationally interdependent of each other and therefore, must be treated as a

single enterprise.

84.     The Corporate Defendants share common ownership, operate out of the same

location, share a common website and exchange employees. Particularly,

Corporate Defendants share a common principal office address: 729 Seventh

Avenue, 15th Floor, New York, New York 10019.

85.     At all times herein, upon information and belief, Individual Defendants used

Corporate Defendants in order to perpetrate a fraud, circumvent a statute, or

accomplish some other wrongful or inequitable purpose.

86.     Upon information and belief, in conducting the affairs of Corporate Defendants,

the Individual Defendants failed to comply with the corporate formalities, usurped

the assets of the Corporate Defendants for personal use, and commingled their

personal assets with the assets of Corporate Defendants.

87.     Upon information and belief, the Corporate Defendants are the alter egos of the Individual Defendants, and as will be established at trial, for the purpose of the claims made by Plaintiffs herein, the Corporate Defendants have no separate legal existence from the Individual Defendants.

88.     Upon information and belief, the Corporate Defendants are the alter egos of one another, and as will be established at trial, for the purpose of the claims made by Plaintiffs herein, the Corporate Defendants have no separate legal existence from the one another.

### Defendants' Failure to Pay Proper Wages was Willful

89.     Defendants as employers have certain statutory obligations towards employees, including the requirement of paying employees at an overtime premium of 150% of their regular rate for each hour worked in excess of 40 and to make, keep and preserve proper payroll records.

90.     The Individual Defendants were aware of their requirement to pay Plaintiffs for each hour worked and at an overtime premium of 150% of their regular rate for each hour worked in excess of 40 hours per week.

91.     As such, the various violations of the law which are alleged herein were committed intentionally and/or willfully by the Individual Defendants.

92.     Defendants have failed to take any steps to ascertain their duties with respect to the payment of wages to employees.

93.     Defendants willfully and intentionally refused to pay Plaintiffs any compensation for hours worked beyond 40 hours per week.

-16-

94.    Defendants wilfully and intentionally refused to pay Plaintiffs at an overtime rate for hours worked beyond 40 hours per week.

95.    Defendants engaged in the willful practice of consistently underpaying Plaintiffs under relevant federal and state laws.

96.    Defendants willfully and intentionally refused to pay Plaintiffs their proper compensation in light of the fact that Plaintiffs complained, on a routine basis, to their supervisors that there were not receiving adequate pay for the amount of hours worked.

97.    As a result, the various violations of law which are alleged herein were committed intentionally and/or willfully by the Defendants.

## FIRST CLAIM FOR RELIEF
### (Breach of Contract against all Defendants)

98.    Plaintiffs repeat and reallege each and every allegation as previously set forth.

99.    The respective Plaintiffs and Defendants each had an oral contract to perform work for Defendants, whereby Plaintiffs would provide building maintenance services as a building handyman for compensation in the form of a specific hourly or weekly wage for all hours worked and a basement apartment.

100.   This oral contract called for Plaintiffs to be paid a specific weekly or hourly wage in exchange for Plaintiffs working a specified number of hours.

101.   Plaintiffs satisfactorily supplied labor and complied with the terms of their employment agreement with Defendants and were therefore entitled to wages they rightfully earned while working for the Defendants.

102.    Defendants failed or refused to pay Plaintiffs the wages to which they were entitled under their respective employment agreements with Defendants.

103.    Defendants' failure or refusal to pay Plaintiffs' wages to which they were entitled under their respective employment agreements with Defendants constitutes a breach of Plaintiffs' respective employment agreements with Defendants.

104.    Specifically, Defendants' failure or refusal to pay Plaintiffs' wages to which they were entitled under their respective oral employment agreements with Defendants breached the clause providing that Plaintiffs were obligated to work no more than 40 hours per week for the particular hourly or weekly wage agreed upon by Plaintiffs.

105.    That by virtue of the foregoing breach of contract by Defendants, Plaintiffs have been damaged in an amount to be proven at trial based upon an accounting of the amount Plaintiffs should have been paid, less amounts actually paid to Plaintiffs, together with an award of interest, costs, disbursements, and attorneys' fees.

## SECOND CLAIM FOR RELIEF
### (Quantum Meruit against all Defendants)

106.    Plaintiffs repeat and reallege each and every allegation previously set forth.

107.    Plaintiffs performed work and services as handymen for Defendants in good faith.

108.    Defendants, by employing Plaintiffs, voluntarily accepted Plaintiffs' services.

109.    Plaintiffs had a reasonable expectation of payment for the hours worked for Defendants, but Defendants failed to remunerate Plaintiffs for all the hours worked.

110.    Plaintiffs were entitled to payment for the unpaid hours worked for Defendants at a rate which constitutes the reasonable value of their services, less amounts actually paid to Plaintiffs, together with an award of interest, costs, disbursements, and attorneys' fees.

### THIRD CLAIM FOR RELIEF
### (New York Labor Law against all Defendants)

111.    Plaintiffs repeat and reallege each and every allegation previously set forth.

112.    Pursuant to New York Labor Law Articles 6 and 19 and the wage orders promulgated thereunder by the New York State Department of Labor, Plaintiffs were entitled to regular wages and overtime wages, which the Defendants intentionally failed to pay in violation of such laws.

113.    Wherefore Plaintiffs seek a judgment against all Defendants for all unpaid wages and unpaid overtime wages which should have been paid, but were not paid, pursuant to the New York Labor Law and the wage orders issued thereunder and the other provisions of the Labor Law; the total amount of such unpaid wages and/or unpaid overtime wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, Plaintiffs, along with an award of attorneys' fees, interest and costs as provided under the New York Labor Law.

### FOURTH CLAIM FOR RELIEF
### (FLSA against all Defendants)

114.    Plaintiffs repeat and reallege each and every allegation previously set forth.

115.    Pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 201 et seq., and

the regulations and policy statements issued under the FLSA in Title 29 of the

Code of Federal Regulations, 29 C.F.R. 500 et seq., Plaintiffs were entitled to an

overtime hourly wage of time and one-half their regular hourly wage for all hours

worked in excess of forty hours per week.

116.     Plaintiffs worked more than forty (40) hours per week for Defendants, and

Defendants willfully failed to make said wage and/or overtime payments.

117.     Plaintiffs seek a judgment for all unpaid wages and unpaid overtime wages, such

sums to be determined based upon an accounting of the hours worked by, and

wages actually paid to Plaintiffs, and Plaintiffs  also seek an award of liquidated

damages, attorneys' fees, interest and costs as provided for by the FLSA.

WHEREFORE, it is respectfully requested that the Court assume jurisdiction

herein and thereafter Plaintiffs demand a trial by jury and judgment against Defendants as

follows:

1.   Compensatory damages in an amount to be determined at trial;

2.   Back pay and front pay;

3.   Liquidated damages pursuant to FLSA and New York Labor Law;

4.   Plaintiffs' costs and reasonable attorney's fees;

5.   Pre-judgment interest; and

6.   Together with such other and further relief that the Court deems just.

Dated: New York, NY
        December 31, 2013

ROBERT WISNIEWSKI P.C.

By: _____

Robert Wisniewski (RW-5308)
Robert Wisniewski, P.C.
Attorneys for Plaintiff
225 Broadway, Suite 1020
New York, New York  10007
(212) 267-2101

Exhibit 1





ABOUT US

EXPERTISE

PROJECTS

NEWS

CONTACT US

COMPANY BACKGROUND          KEY EXECUTIVES                    JOINT VENTURE PARTNERS

**William P. Dickey**
FOUNDER, PRESIDENT & CEO

**Michael DiGiacomo**
DIRECTOR OF CONSTRUCTION

**Robert R. Kilroy, CFA**
DIRECTOR

**Stephen N. Benjamin**
PRINCIPAL, CHIEF OPERATING OFFICER

**Drew Spitler**
DIRECTOR OF DEVELOPMENT

**Andrew Levison**
DIRECTOR OF ASSET MANAGEMENT &
OPERATIONS



Mr. Dickey founded Dermot in 1991, and today oversees its investment, development, and asset management activities. Mr. Dickey has directed Dermot's growth to include investment and development in New York City and other markets. He has extensive experience in national markets across multiple asset classes, including multi-family, retail, and office properties.

Previous Experience
• Managing Director, The First Boston Corporation (now Credit Suisse), 1986-1990
• Cravath, Swaine & Moore, 1974-1986 (Partner 1980-1986)
• U.S. Air Force Officer, 1964-1970

J.D., Columbia Law School (Law Review)
M.A., International Affairs, Georgetown University
B.S., U.S. Air Force Academy

Mr. Dickey is also a trustee for the Vera Institute of Justice, he is a member of the Board of Directors of Kilroy Realty Corporation (NYSE: KRC) and a member of the Urban Land Institute.